**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**P & O NEDLLOYD, LTD.**                                              **PLAINTIFF**

      v.                Civil No. 04-5057

**SAMS MANAGEMENT GROUP, INC.**                                       **DEFENDANT**

      v.

**CERTAIN UNDERWRITERS AT LLOYD'S,**
**LONDON, Subscribing to Insurance**
**Contract No. MC02ADKH**                                **THIRD PARTY DEFENDANTS**

**O R D E R**

Now on this 30th day of August, 2005, comes on for consideration the **Motion Of Sams Management Group, Inc. To Reconsider The Granting Of Third Party Defendant's Motion For Summary Judgment** (document #74), and from said motion, and the response thereto, the Court finds and orders as follows:

1. Plaintiff P & O Nedlloyd, Ltd. ("P&O") sued to recover on an account for services rendered to defendant Sams Management Group, Inc. ("Sams") in connection with four shipments of frozen chicken (the "Cargo") which were lost after being unloaded in St. Petersburg, Russia. Sams filed a third-party complaint against its insurer, Certain Underwriters at Lloyd's London Subscribing to Insurance Contract No MC02ADXH ("Lloyd's"), seeking to recover for the lost Cargo under the insurance contract.

Lloyd's moved for summary judgment, which was granted by Order dated August 23, 2005, for reasons set forth in a Memorandum

Opinion of the same date.  Sams now asks the Court to reconsider that decision.

2.  Before taking up the arguments presented in the pending motion, the Court believes it important to point out that Sams did not present the arguments made in its Motion For Reconsideration in its response to Lloyd's Motion For Summary Judgment.

If the motion sought only to present additional facts, the Court would not countenance it, given that a non-moving party is required to meet proof with proof when facing a motion for summary judgment. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op., Inc.**, 838 F.2d 268 (8th Cir. 1988).

That is not the case here, however.  The Lloyd's Policy and the two insuring Certificates involved in the transaction were made a part of the exhibits to the Motion For Summary Judgment. The issues raised by the pending motion are not factual, but legal, and the Court believes it necessary to address them.

While the Court does not suggest that movant intentionally engaged in such a practice in this instance, it will express its strong disapproval of any practice whereby a party holds back some arguments on a potentially dispositive motion until after the Court has ruled adversely -- and then seeks reconsideration based on the arguments so withheld, with the belief that they might prove successful where those previously advanced had not.  In light of the fact that trial is but a week away, such an apparent

-- though hopefully unintentional -- course of action in this case has occasioned considerable inconvenience to all concerned.

3. The following undisputed facts, as established by the parties in connection with the Motion For Summary Judgment, bear on the analysis of the Motion For Reconsideration:

* In connection with Sams' business of selling frozen chicken, Lloyd's issued an open policy of insurance, Insurance Contract No MC02ADXH (the "Policy") to Sams for a period of one year, commencing February 1, 2002. When Sams obtained a shipment of chicken for which it needed coverage, Sams would contact Lloyd's with the particulars of the shipment, and a certificate of insurance would be issued.

* Sams obtained certificates of insurance identified by numbers B2913345 and B2913347 for shipments of chicken to St. Petersburg, Russia, pursuant to Invoices 199 and 206, which invoiced the shipment of 24 containers of frozen chicken to its Russian buyer, KVADRO.

* Invoices 199 and 206 contain all the terms of the contracts between Sams and KVADRO for these shipments.

* The shipment terms stated in Invoices 199 and 206 were C.I.F.[1] Sams maintains that this was a typographical error, and that the shipment terms should have been F.A.S.[2]

---

[1] The U.C.C. abbreviation for "cost, insurance, and freight."

[2] The U.C.C. abbreviation for "free alongside."

-3-

* The payment terms stated in Invoices 199 and 206 were 20% down, 20% upon shipment, and 60% nineteen days after discharge.

* Sams complied with all its obligations under the terms of the contract between Sams and KVADRO.

* The Cargo invoiced on Invoices 199 and 206 was shipped from New Orleans, Louisiana, and arrived in St. Petersburg on four separate shipments, on March 3, 2002; March 4, 2002; March 26, 2002; and April 5, 2002.

* Events not relevant to the pending motion caused the disappearance of the Cargo after it was unloaded in St. Petersburg. Sams received no payment for the shipments, and eventually made a claim against the Policy, which Lloyd's denied. Those events led to Sams' claim against Lloyd's in the pending litigation.

4. In its Memorandum Opinion of August 23, 2005, the Court found in favor of Lloyd's on the coverage issue, for the reason that

> [t]he undisputed facts reflect that title to the goods had passed to KVADRO before the seizure of the Cargo. Under **A.C.A. §4-2-401**, "[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." Sams had complied with all its obligations under the terms of the contracts between Sams and KVADRO. Invoices 199 and 206 contain all the terms of the contracts, and there is no reservation in those Invoices with reference to when title to the goods was to pass.

> The uncontradicted testimony of Andrew Sams also reflects that his company did not retain any security interest in the Cargo. It thus appears to the Court that Sams did not have an insurable interest in the Cargo at the time of the seizure.

Rather than focusing on the issue of insurable interest, Sams' Motion For Reconsideration attempts to demonstrate that regardless of whether the shipping terms were C.I.F. or F.A.S., there was still coverage under the Policy.

5. The first reason suggested in support of this argument is the testimony of Brant Turner, who was responsible for insurance needs at Sams, to the effect that he "believed" and "understood" that the Policy covered the shipment "until it gets to my customer's warehouse."

This argument is without merit, as Turner's "beliefs" and "understandings" do not alter the plain language of the Policy. In this diversity of citizenship case, the Court is bound to resolve substantive disputes according to the decisions of the Arkansas Supreme Court. **Bockelman v. MCI Worldcom, Inc., 403 F.3d 528 (8th Cir. 2005).** That court has held that "when the terms of the policy are clear, the language in the policy controls." **Curley v. Old Reliable Casualty Co., 85 Ark. App. 395, 155 S.W.3d 711 (2004).**

The Insurance Cover Note of the Policy states that "[t]he contract evidenced by this Cover Note is subject to the terms, conditions and exclusions of the policy to be issued." The two

Certificates of Insurance issued with regard to the Cargo (which form the policy as to that Cargo) include, under Conditions of Insurance, the Institute Frozen Meat Clauses. The Institute Frozen Meat Clauses provide that "[i]n order to recover under this insurance the Assured must have an insurable interest in the subject-matter insured at the time of the loss."

It can thus be seen that the plain language of the policy requires an insurable interest at the time of loss, and that Turner's unilateral mistake does not alter the coverage provided.

6. Sams also relies on various Policy provisions in support of its argument that the shipping terms do not affect the insurance coverage.

(a) Sams points out that the "Assured" under the Policy is

> SAMS MANAGEMENT GROUP, INC. &/OR MORNINGSTAR PROVISIONS LLC and/or as Agents and/or Subsidiary and/or Associated and/or for whom they may have instructions to insure.

Sams contends that this provision means that "Sams has coverage under this policy even if Sams is acting as an agent with instructions to insure."

The Court does not agree that this provision means that the Policy automatically covered Sams until the Cargo arrived at the customer's warehouse, regardless of other facts in the case. Under a C.I.F. contract, Sams would have had an obligation to insure the Cargo for the buyer's risk during transit, but the insured in that instance would be the buyer -- not Sams. Cf. **New**

**York Marine & General Insurance Co. V. Tradeline (L.L.C.)**, 266 **F.3d 112 (2nd Cir. 2001).** Here, Sams does not claim to be acting as agent of the buyer but, rather, is seeking to recover its own losses.

(b) Sams also argues that the "BASIS OF VALUATION" provisions in the Policy show "that goods were insured whether they were not yet sold (i.e., F.A.S.) or were already sold (i.e. C.I.F.)."

The Court is not persuaded by the argument that the establishment of a basis for valuation of sold goods, amounts to an agreement to insure goods as to which title and the risk of loss has passed to the buyer.

Lloyd's correctly points out that, under a C.I.F. contract, an insurable interest in the seller can still exist after goods are sold, *e.g.,* when the seller retains a security interest. On the facts in this case, however, Sams did not retain a security interest and it suggests no other way in which it held an insurable interest in the Cargo. Sams had done all that was required under its contracts with KVADRO and both title and the risk of loss had passed to KVADRO. Thereafter, Sam's only risk was that KVADRO would fail to pay the remainder of the purchase price of the Cargo. The Policy does not, however, insure against credit risks.

(c) Sams next points to the "DURATION OF COVERAGE" provision, which states:

> This insurance covers the subject matter insured hereby during the whole of the period covered by the duration provisions of the insuring clauses applicable and any further transit or period of storage whether prior to, intervening or subsequent thereto for which provision is made under this contract and irrespective of whether the interest of the Assured is as principals, bailees or agents in any other capacity.

Sams contends that this provision applies to afford coverage since the Cargo was in a period of storage when it disappeared.

Lloyd's counters this contention with the assertion that this provision does not create an insurable interest where one does not exist. Instead, argues Lloyd's, it merely establishes the point in transit at which coverage will end, i.e., the extent that coverage for an existing insurable interest will continue during intermediate transit and storage periods.

The Court agrees with Lloyd's position on the issue. The quoted language clearly relates to an insurable interest one might have as a principal, bailee, or agent. It does not serve to extend the coverage to goods that, as here, have passed to another and concerning which the insured no longer had any interest as a principal, bailee or agent. Accordingly, the Court rejects this argument as being without merit.

(d) Finally, Sams points to the "SELLER'S INTEREST" clause, which provides as follows:

> Where goods are sold Cost and Freight, Free on Board or on other terms directly to overseas buyers whereby the responsibility for arranging insurance rests with the buyer it is agreed to cover seller's interest subject to the following conditions

> Insuring Clauses as per Clause (Conditions of Insurance) above.
>
> This insurance is to cover seller's interest only.
>
> Claims in respect of loss of, damage to or deterioration of the subject matter insured hereunder shall be payable only if and to the extent that the buyer fails to pay or is unable to remit payment for the subject matter insured lost, deteriorated or damaged.
>
> Including the risk of the Assured being irretrievably deprived of or being unable to resume title to the subject matter insured from any cause other than the insolvency of the buyer or consignee or any consequence thereof.

Sams contends that this provision means that "even if the buyer has the responsibility for providing the insurance, there is still coverage under this policy for the seller's interest, which was the interest of Sams." The Court agrees that this provision indicates that the Policy provided coverage for the seller's interest where the buyer is responsible for arranging for insurance. However, the Court does not agree that this provision created an insurable interest in Sams -- inasmuch as both title and the risk of loss had passed from Sams to the buyer before the date of the loss. Had Sams retained a security interest in the goods, and been unable to collect or repossess (because the goods were lost or damaged), and had KVADRO been responsible for arranging its own insurance, this clause would have come into play. Those are not the facts of this case, however.

**IT IS THEREFORE ORDERED** that the **Motion Of Sams Management**

**Group, Inc. To Reconsider The Granting Of Third Party Defendant's Motion For Summary Judgment** (document #74) is **denied.**

**IT IS SO ORDERED.**

                                          <u>/s/ Jimm Larry Hendren</u>
                                          **JIMM LARRY HENDREN**
                                          **UNITED STATES DISTRICT JUDGE**